AMERICAN MOTORS CORPORATION,
Petitioner,

v.

Barbara BLUM, Acting Administrator,
Environmental Protection Agency,
Respondent,

State of California and Automobile Im-
porters of America, Inc., Intervenors.

No. 78–1799.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 26, 1979.

Decided July 20, 1979.

Alan S. Weitz, Washington, D. C., with whom David J. Freeman, Washington, D. C., and Kenneth I. Gluckman, Southfield, Mich., were on the brief for petitioner.

James McNab, III, Atty., Environmental Protection Agency, Washington, D. C., a member of the bar of the Supreme Court of California, pro hac vice, by special leave of court, Bruce I. Bertelsen, Atty., Environmental Protection Agency, Washington, D. C., a member of the bar of the Supreme Court of Michigan, pro hac vice, by special leave of court, and David E. Dearing, Atty., Dept. of Justice, Washington, D. C., with whom Sanford Sagalkin, Acting Asst. Atty. Gen., Joan Z. Bernstein, General Counsel, and Gerald K. Gleason, Atty., Environmen-

tal Protection Agency, and Angus Macbeth, Atty., Dept. of Justice, Washington, D. C., were on the brief for respondent. James Moorman and Lloyd Guerci, Attys., Dept. of Justice, Washington, D. C., also entered appearances for respondent.

Joel S. Moskowitz, Deputy Atty. Gen., Sacramento, Cal., of the State of California, for intervenor State of California.

Milton D. Andrews, Donald M. Schwentker, and Lance E. Tunick, Washington, D. C., were on the brief for intervenor Automobile Importers of America, Inc.

Before WRIGHT, Chief Judge, and MacKINNON and ROBB, Circuit Judges.

Opinion for the court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

In this case American Motors Corporation (AMC) attacks a decision by the Administrator of the Environmental Protection Agency which permits the State of California to apply to AMC motor vehicle emission standards more strict than the federal standards promulgated under the Clean Air Act. 42 U.S.C. § 7401 *et seq.* Specifically AMC complains that the California standards permitted by the Administrator deny to AMC the "lead time" mandated by Congress in section 202(b)(1)(B), 42 U.S.C. § 7521(b)(1)(B). We conclude that the Administrator's order must be reversed.

Section 202(a)(1) of the Act directs the Administrator by regulation to prescribe automotive emission standards. Section 202(a)(2) provides that "Any regulation prescribed under paragraph (1) . . . shall take effect after such period as the Administrator finds necessary to permit the development and application of the requisite technology, giving appropriate consideration to the cost of compliance within such period." Section 202(b)(1)(B) provides:

(B) The regulations under subsection (a) of this section applicable to emissions of oxides of nitrogen from light-duty vehicles and engines manufactured during model years 1977 through 1980 shall contain standards which provide that such

emissions from such vehicles and engines may not exceed 2.0 grams per vehicle mile. The regulations under subsection (a) of this section applicable to emissions of oxides of nitrogen from light-duty vehicles and engines manufactured during the model year 1981 and thereafter shall contain standards which provide that such emissions from such vehicles and engines may not exceed 1.0 gram per vehicle mile. *The Administrator shall prescribe standards in lieu of those required by the preceding sentence, which provide that emissions of oxides of nitrogen may not exceed 2.0 grams per vehicle mile for any light-duty vehicle manufactured during model years 1981 and 1982 by any manufacturer whose production, by corporate identity, for calendar year 1976 was less than three hundred thousand light-duty motor vehicles worldwide* if the Administrator determines that—

(i) the ability of such manufacturer to meet emission standards in the 1975 and subsequent model years was, and is, primarily dependent upon technology developed by other manufacturers and purchased from such manufacturers; and

(ii) *such manufacturer lacks the financial resources and technological ability to develop such technology.* (Emphasis added)

■ The legislative history discloses that the purpose of the provision in section 202(b)(1)(B) for "standards in lieu of those required by the preceding sentence" was to provide additional "lead time" to small producers who are dependent upon others for necessary technology. The three principal automotive emissions are hydro carbons (HC), carbon monoxide (CO), and nitrogen oxides (NOx). Control of these emissions is achieved by catalytic converters designed to operate simultaneously on all three emissions. The converters are complex electronic devices and their design and development require extensive research, specialized laboratories and highly trained scientists and technicians. Small companies such as AMC

that do not have the capacity or facilities for this work are required to buy pollution control devices from other manufacturers. This dependence upon others means that small manufacturers lag behind larger companies in receiving the benefits of the latest technology; they must wait until hardware has been developed and tested by others and must then adapt it to their own vehicles.

The language in section 202(b)(1)(B), relating to small manufacturers, was contained in an amendment sponsored by Senator Nelson. He stated that he understood his amendment would cover only AMC and another small manufacturer, Avanti. 123 Cong.Rec. S9233 (daily ed. June 9, 1977). He explained the purpose of the provision:

> It is agreed by everyone without any exception that I know of, that *American Motors has a special problem* because, unlike the big three automakers, it does not design and build its own pollution control systems. It must purchase this technology from General Motors, Ford, or Chrysler.
>
> Once it has purchased the technology *it must modify and adapt the system* to its own product line. This requires between 1 and 2 years.
>
> Consequently, *American Motors Corp. is unavoidably behind in the pollution abatement timetable from the very beginning.* Therefore, since American Motors lacks the electronic control engineering expertise, *it should not be and cannot be expected to comply with the same timetable established for the three major manufacturers.*

123 Cong.Rec. S9231 (daily ed. June 9, 1977) (Emphasis added).

Senator Nelson emphasized that AMC's problem is particularly acute because meeting a 1.0 or less NOx standard requires new three-way catalytic converter technology:

> To meet these numbers, new basic power-plant control systems with onboard computer-like electronic controls must be used. To go to these lower numbers the company must purchase total systems control, not just individual components.

AMC will have to aline [sic] itself, on a long-term basis, with one of the major manufacturers and then adapt its pollution abatement system to AMC's product line.

*Id.,* p. S9232.

Finally, the Senator stated that AMC needed at least two years of lead time in addition to that allowed the rest of the industry "to develop adequate experience with and confidence in the advanced systems of technology that would be necessary." *Id.*

The EPA supported the low volume manufacturer exception proposed by Senator Nelson. Thus on the day the Nelson amendment was introduced in the Senate the Administrator wrote to the Senator acknowledging AMC's need for extra lead time. The Administrator stated:

> The 1.0 gram/mile standard creates an additional problem peculiar to AMC and other small manufacturers. This standard requires the development of electronic and three-way catalyst technology. AMC will apparently have to purchase this technology from other manufacturers and then factor it into their product line before the company will be able to achieve compliance. For this reason, AMC *may experience lead time problems substantially different from those of other domestic manufacturers.*

123 Cong.Rec. at S9232 (Emphasis added). The Administrator took a similar position before the House Committee considering the bill, *see* 1977 House Hearings at 1683, Statement of Douglas Costle, recommending an additional year of lead time. His recommendation was endorsed by the Department of Transportation and the Federal Energy Administration in a May 19, 1977 interagency report. See "An Analysis of Alternative Motor Vehicle Emission Standards" prepared by DOT, EPA, FEA, May 19, 1977, Reprinted in 1977 House Hearings at 1693, 1702.

■ On June 14, 1978 the Acting Administrator of EPA granted a waiver of federal preemption to permit California's passenger

car emission standards, including the 1.0 NOx standard for 1980 and lower levels of subsequent years, to go into effect. The waiver was granted pursuant to section 209 of the Act, 42 U.S.C. § 7543. The Administrator concedes that under section 209(b)(1) he could not grant a waiver of federal preemption of state standards if he found that the state standards are inconsistent with section 202(a), governing federal standards. As we have said section 202(a)(2) authorizes the Administrator to set federal standards to take effect only "after such period as the Administrator finds necessary to permit the development and application of the requisite technology."

AMC contends that the California NOx standards are inconsistent with section 202(a) because they deny to AMC the two-year lead time mandated by Congress in section 202(b)(1)(B). The Administrator brushes this argument aside upon the ground that "Under section 209(b)(1)(C) of the Act, 42 U.S.C.A., § 7543(b)(1)(C) a waiver request must be denied if the California standards are inconsistent with section 202(a), not section 202(b). Accordingly this consistency test does not relate to section 202(b)(1)(B) as AMC contends." (Br., P. 38) In this we think the Administrator is mistaken.

 Section 202(b)(1)(B) directs that the regulations prescribed by the Administrator pursuant to section 202(a) shall require that NOx emissions may not exceed 2.0 grams per vehicle mile for vehicles and engines manufactured during model years 1977 through 1980. For those manufactured during model year 1981 and thereafter, NOx emissions may not exceed 1.0 grams per vehicle mile. In establishing these regulations the Administrator is bound by section 202(a)(2) to allow such lead time as he finds necessary, that is, such period "as [he] finds necessary to permit the development and application of the requisite technology." Section 202(b)(1)(B) further directs the Administrator, pursuant to section 202(a), to prescribe regulations governing NOx emissions from vehicles produced by small manufacturers. In the case of these small manufacturers the Administrator is not directed to allow such lead time as he finds necessary; on the contrary section 202(b)(1)(B) itself provides that for such vehicles NOx emissions "may not exceed 2.0 grams per vehicle mile for any light-duty vehicle manufactured during model years 1981 and 1982." In short, Congress itself finds and mandates that with respect to small manufacturers a lead period of two years is necessary. We think the effect of this congressional mandate is to assimilate or incorporate in section 202(a)(2) the proviso of section 202(b)(1)(B). We conclude therefore that the California regulation, which denies to AMC a lead time of two years, is inconsistent with section 202(a)(2).

If the Administrator's construction of the statute is correct any state, by adopting the standards established by California under its waiver from EPA, may deny to a small manufacturer the lead time that Congress has found to be necessary. We must reject an interpretation that would permit such a frustration of congressional purpose. The necessity for lead time cannot be obviated by a waiver.

The decision of the Administrator, to the extent it permits California to deny to AMC the lead time prescribed by section 202(b)(1)(B) of the Act, is vacated.

*So ordered.*